UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
YORKSHIRE TOWERS COMPANY, L.P. and     **Case No. 11-cv-1058 (TPG)**
YORKSHIRE TOWERS TENANTS ASSOCIATION,

                              Plaintiffs,

           -against-                                 **Reply Declaration of**
                                                                           **Ernest A. Conrad**
UNITED STATES DEPARTMENT OF                      **(3 of 8)**
TRANSPORTATION, et al
                               Defendants.
------------------------------------------------------------------------x
YORKSHIRE TOWERS COMPANY, L.P. and
YORKSHIRE TOWERS TENANTS ASSOCIATION,

                              Plaintiffs,                       **Case No. 10-cv-8973 (TPG)**

           -against-

THE FEDERAL TRANSIT ADMINISTRATION, et al



                              Defendants.
------------------------------------------------------------------------x

       Ernest A. Conrad, declares the following:

       1.      This Reply Declaration is in further support of the motion by Plaintiffs Yorkshire Towers Owner and Tenants Association (at times "YT") for preliminary injunctive relief, and in further opposition to the companion limitations motion by the government defendants (collectively, "FTA and MTA", or the "Agencies") regarding the right of YT to present significant new information; and in reply to the opposing declaration of Robert Montfort, dated October 25, 2011.

       2.      Mr. Montfort makes a series of errors and misleading statements regarding: 1) his "understanding" of the use of elevators under the most current fire and

life safety evacuation standards recognized under NFPA 130 (2010 ed.)(the "2010 Code") enacted after the issuance of the SEA in 2009; 2) the "problems" he sees associated with the use of elevators; and 3) that the Reduced Alt 5 does not meet the better and improved public safety alternative recognized under the 2010 Code (¶ 11).

3. First, the use of elevators for egress and fire fighting in tall structures is not a new concept. Rather, it has now become an essential element in the wake of the tragedy that occurred in New York City on 9/11. The City of New York now mandates the use of elevators "in Readiness" for fire fighters to use in responding to emergencies such as fires as of the 2008 NYC Building Code.

4. Second, the conclusion that elevators are too slow by Mr. Montfort at ¶¶24-25 is wrong. To the contrary, in a situation such as here with the 86th Street Second Avenue Subway station, where egress is in the up direction of 80 feet by people of all ages, using stairs or out of service escalators will likely leave many unable to complete the climb. Elevators will allow all ages and physical condition of people to quickly rise and exit to safety.

5. Third, the claim that elevators under the 2010 Code have "substantial Limitations" is misleading in that 2010 Code contains prudent safeguards for the use of elevators to egress just like it has prudent safeguards for use of escalators to egress. (See Exhibit 9 to YT's principal moving papers, the 2010 Code, and compare Section 5.5.6.3.3 regarding safeguards for elevators with Section 5.5.2 regarding safeguard for escalators) What 2010 Code did was allow elevators to be counted for contributing 50% of emergency egress capacity in subway stations provided the prudent safeguards are met. This is front and center in the introduction to the 2010 Code: "The 2010 edition of NFPA

130 includes provisions that allow elevators to be counted as contributing to the means of egress in stations." (See Exhibit 9 to YT's principal moving papers, the 2010 Code, at p. 130-2.)

6. Further, the use of elevators is considered superior to stairs and escalators by the NYC building Codes and NYC Fire Code, especially in an up direction egress of about an 8-story climb that the Second Avenue Subway presents at 86th Street. Elevators will accommodate people of all physical conditions, toddlers in strollers, wheelchair bound people, and people carrying bags or large objects. This is precisely the solution that the MTA arrived in deciding that 5 high speed elevators at the southeast corner in a building at 72nd Street was "preferred" over escalators at an identical midblock siting of entrances on a sidewalk. It would be entirely inconsistent for the FTA and MTA not to pursue that same solution at 86th Street.

7. Second, it is accurate to say that the 2010 Code, which is a national standard, does not mandate the use of either escalators or elevators. However, this neglects to take into account the standards applied in New York City. Precisely because in New York City, and the Upper East Side in particular, is one of the most densely populated areas in the country, where an egress stair climb of 80 feet up is required, the City of New York building codes have now been changed to mandate the use of elevators which are recognized as superior for fire fighter use.

8. While as Mr. Montfort says at ¶ 19 that elevators have been studied for use in fires for many years, it was not until the 9/11 tragedy "wakeup call" that there was an impetus to recognize the superior value of elevators and put them into action in fire situations through the enactment of the NYC building Code of 2008.

9. Mr. Montfort's argument at ¶ 22 that "elevators are not practical, prudent or safe" is an arbitrary statement and in error since the 2010 Code now specifically authorizes their use for egress.

10. Contrary to Mr. Montfort's claim at ¶ 28, Reduced Alt. 5 design provides for a smoke tight safe area, smoke tight elevator shafts and adequate positive ventilation to meet the requirements of the 2010 Code.

11. At ¶ 29, Mr. Montfort commits fundamental error in concluding that a larger lobby size is needed other than what has been designed under Reduced Alt 5 by failing to calculate all the egress activities that are concurrently occurring.

12. Mr. Montfort is in error regarding the feasibility of the Reduced Alt 5 preliminary design at ¶ 30 since positive ventilation would be calculated and provided in final design details.

13. At ¶33 Mr. Montfort misses another basic point. It is not that escalators are illegal it is just that they do not reflect modern thinking and represent a missed opportunity for enhanced fire and public safety through the use of elevators recognized and promoted by FDNY about the best emergency egress for deep 8-story stations that are unique to New York City and the Second Avenue Subway.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on October 27, 2011.

_____
Ernest A. Conrad