UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------x
                               :

YORKSHIRE TOWERS COMPANY, L.P.,   :
ET AL.,                                :

               Plaintiffs,    :        11 Civ. 1058 (TPG)

                        :       **<u>OPINION</u>**

        – against –        :

                        :

UNITED STATES DEPARTMENT OF   :
TRANSPORTATION, ET AL.,         :

                        :

          Defendants.
---------------------------------------------x

Plaintiffs Yorkshire Towers Company, L.P. and Yorkshire Towers Tenants Corporation bring this suit challenging the proposed location of the 86th Street entrance of the Second Avenue Subway.  The current proposal is to place the main part of the entrance in front of the Yorkshire Towers apartment building, known in these proceedings as Alternative 7.

In this litigation, plaintiffs urge that the entrance should be at the southeast corner of 86th Street and Second Avenue, an alternative which is referred to in this litigation as "Revised Alternative 5."

Defendants move to dismiss plaintiffs' complaint.  Plaintiffs have moved for a preliminary injunction.

Defendants' motion to dismiss is granted.  The court already denied plaintiffs' motion for a preliminary injunction at a hearing on

November 2, 2011, but this opinion will demonstrate more fully the reason for such denial.

## THE COMPLAINT

Unless otherwise indicated, the following facts are taken from the complaint and two documents referred to throughout the complaint, (i) the Supplemental Environmental Assessment prepared by the Metropolitan Transit Authority and its affiliates dated May 2009 and (ii) the Finding of No Significant Impact issued by the Federal Transit Administration dated October 29, 2009.  These facts are assumed to be true for purposes of the motion to dismiss.

Parties

Plaintiff Yorkshire Towers Company, L.P. is the owner of a 21-story, 695-unit apartment building that spans the length of Second Avenue between 86th Street and 87th Street.  This building has over 2,000 residents.  Plaintiff Yorkshire Towers Tenants Association is an unincorporated association made up of the tenants in the Yorkshire Towers building.

The defendants in this action include the United States Department of Transportation ("DOT"), the Federal Transit Administration ("FTA), the Metropolitan Transit Authority ("MTA"), the New York City Transit Authority ("NYCT"), and the MTA Capital Construction Company ("MTACC").  Plaintiffs have also sued the

Secretary of the DOT, the Administrator of the FTA, the Chairman of the MTA, the President of the NYCT, and the President of the MTACC.

The 86th Street Subway Entrance

The MTA is in the process of building the Second Avenue Subway, which will run along Second Avenue from 125th Street in Harlem to Hanover Square in Manhattan.  Although the MTA is building the subway, this is a federally funded project and is subject to federal environmental review.

The MTA considered various alternatives for the 86th Street subway entrance.  One of these alternatives was what is known as Alternative 7, which would locate two pairs of escalators on the north side of 86th Street, in front of Yorkshire Towers, and one elevator at the southeast corner of the intersection.  Another alternative was Alternative 5, which would locate five elevators in a newly constructed building on the southeast corner of Second Avenue and 86th Street.  Ultimately, the MTA chose Alternative 7 as the "Preferred Alternative."

The MTA chose the Preferred Alternative in part because of passenger convenience concerns.  The MTA determined that 2,900 passengers would enter the subway and 700 would exit at the 86th Street entrance during the morning peak hour, and that 68 percent of those passengers would come from northeast of the intersection at 86th Street and Second Avenue.  Alternative 7 would allow the large number

of northern-residing passengers to enter the subway without crossing to the south side of 86th Street.

Another important benefit that the MTA identified with the Preferred Alternative is that it would not require the acquisition of buildings, displacement of residents or businesses, temporary closures of businesses, or modifications to existing buildings.  Alternative 5, in a revised form as will be described, is advocated by plaintiffs.  In the original form considered by the MTA, it would require the acquisition and destruction of two buildings and displacement of two businesses and fifteen residents.

The MTA announced its decision in a Supplemental Environmental Assessment ("SEA").  The SEA was published and distributed in May 2009.  A public hearing was held on June 18, 2009.  Comments were allowed until July 31, 2009.

Plaintiffs attacked the MTA's decision to place the subway entrance mid-block and cited public safety, pedestrian convenience, traffic, and quality of life reasons why the subway entrances should be placed elsewhere.  Plaintiffs did not at this stage insist on Alternative 5, although in one comment they indicated that the entrances to the subway should be on the south side of the street, and Alternative 5 was on that side of the street.

After evaluating the MTA's decision and the public comments, the FTA issued its Finding of No Significant Impact ("FONSI") on October 29,

2009.  In the FONSI, the FTA responded at length to comments from numerous concerned residents who objected to various aspects of the Preferred Alternative.  The FTA found that Alternative 7 was preferable to Alternative 5.  The main reasons for this were that Alternative 7 would not require the acquisition of any buildings or the displacement of any businesses or residents and would be convenient for passengers.

On December 9, 2009, the FTA published a Notice of Limitation on Claims in the Federal Register.  This notice announced the FTA's decision to locate the 86th Street subway entrance in front of Yorkshire Towers.  The notice stated that a "claim seeking judicial review of the FTA actions announced herein for the listed public transportation projects will be barred unless the claim is filed on or before June 7, 2010."  See 74 Fed. Reg. 235, 65203 (Dec. 9, 2009).

Plaintiffs first provided defendants with Revised Alternative 5 in December 2010, three months before they filed this lawsuit, and they presented defendants with subsequent refinements to Revised Alternative 5 during the summer of 2011.  The main difference between Revised Alternative 5 and the original Alternative 5 considered by the MTA is that the revised version requires the acquisition of one commercial property and nine residential units, as opposed to the original, which required the acquisition of two commercial properties and fifteen residential units.[1]

---

[1] In their complaint and their papers on the present motions, plaintiffs also set forth numerous other alleged benefits of Revised Alternative 5 over the original Alternative 5 and the Preferred Alternative.

Although defendants apparently reviewed Revised Alternative 5, they did not adopt Revised Alternative 5 or issue a formal response explaining why they would not adopt it.

The Present Action

Plaintiffs filed this suit on February 16, 2011.  Their primary claim arises under the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321-4347 ("NEPA").  Plaintiffs claim that the agencies' selection of Alternative 7 was arbitrary and capricious.

Plaintiffs also claim that the agencies have a continuing obligation under NEPA to consider "new information."  The issue of new information is relevant to the statute of limitations issue, which will be discussed hereafter.  The only piece of new information referred to in plaintiffs' complaint is Revised Alternative 5.

In their opposition papers and at oral argument on this motion, plaintiffs also rely on the following additional pieces of allegedly new information, which are not located anywhere in their complaint:

- The MTA's Design Guidelines;

- The 2010 edition of the National Fire Protection Association 130, "Standard for Fixed Guideway Transit and Passenger Rail Systems" ("NFPA 2010");

- Solutions to queuing and maximum surge condition problems;

- Solution to pedestrian inconvenience concerns;

- Cost analyses;

- Claims of superior safety considerations related to Revised Alternative 5. [2]

All of these pieces of new information are offered to show that Revised Alternative 5 is superior to the Preferred Alternative.

Plaintiffs also bring state law claims under New York's State Environmental Quality Review Act, N.Y. Env. Cons. L. Art. 8 ("SEQRA"), and New York General Municipal Law section 51.  The SEQRA claim alleges various failures to appropriately consider the environmental impacts of the Preferred Alternative.  The claim under the General Municipal Law alleges misapplication of funds.

The Present Motions

Defendants base their motion to dismiss on the argument that the claim presented in the complaint is barred by the applicable statute of limitations.  The claim is an attack on the decision to approve the entrance in front of Yorkshire Towers.  Defendants contend that the lawsuit, attacking the decision, was not brought within the allowed time period.

Plaintiffs contend that the complaint, seeking to set aside the decision, is not time-barred because of equitable tolling.  In addition, they contend that they have brought up various forms of "new information" not considered in making the decision, and that under

---

[2] Plaintiffs also initially claimed that certain letters written by the MTA were new information, but at the hearing on this motion on November 2, 2011, plaintiffs withdrew this argument.

NEPA, this new information must be given fresh consideration and that
their claim in this regard is not time-barred.

In their motion for a preliminary injunction, plaintiffs requested an
injunction to preserve the status quo by holding up work on the 86th
Street subway entrance.

## DISCUSSION

The Relevant NEPA Provisions Regarding Limitations

Under NEPA, there is a 180-day statute of limitations.   The statute
provides:

> Notwithstanding any other provision of law, a claim arising
> under Federal law seeking judicial review of a permit,
> license, or approval issued by a Federal agency for a highway
> or public transportation capital project shall be barred
> unless it is filed within 180 days after publication of a notice
> in the Federal Register announcing that the permit, license,
> or approval is final pursuant to the law under which the
> agency action is taken, unless a shorter time is specified in
> the Federal law pursuant to which judicial review is allowed.

23 U.S.C. § 139 (l)(1).

Thus, an action seeking judicial review of the approval by a
federal agency for a public transportation capital project is barred
unless it is filed within 180 days after publication of a notice in the
Federal Register announcing the final approval of such project.

Here, notice of the FTA's decision to site the main subway entrance
mid-block on 86th Street was published in the Federal Register on
December 9, 2009.  The statute of limitations expired on June 7, 2010.

Plaintiffs did not commence this action until February 2011. Thus the action would appear to be barred by the statute of limitations.

However, a de facto exception to the statute of limitations is created by the concept of "new information" contained in 23 U.S.C. § 139(l)(2), which provides:

> The Secretary shall consider new information received after the close of a comment period if the information satisfies the requirements for a supplemental environmental impact statement under section 771.130 of title 23, Code of Federal Regulations.

The regulation referred to provides:

> (a) A draft EIS, final EIS, or supplemental EIS may be supplemented at any time. An EIS shall be supplemented whenever the Administration determines that:
>
> (1) Changes to the proposed action would result in significant environmental impacts that were not evaluated in the EIS; or
>
> (2) New information or circumstances relevant to environmental concerns and bearing on the proposed action or its impacts would result in significant environmental impacts not evaluated in the EIS.

23 C.F.R. § 771.130(a)(1)-(2).

As the statute points out, the reference is to new information received after the close of the comment period. The apparent assumption in the statute is that the "new information" was something not considered in the making of the decision. The statute of limitations in § 139(l)(1) does not apply to "new information."

In an attempt to avoid the statute of limitations, plaintiffs argue that (1) the doctrines of equitable estoppel or equitable tolling should

apply to prevent their claims from being time-barred and (2) the alternative they now urge – Revised Alternative 5 – involves new information, as to which the 180-day statute of limitations does not apply.

Equitable Tolling and Equitable Estoppel

Plaintiffs contend that for equitable reasons this court should excuse their noncompliance with the 180-day statute of limitations.

Equitable estoppel applies where a defendant's "egregious wrongdoing . . . prevents a plaintiff from bringing suit on a claim of which the plaintiff is aware." Netzer v. Continuity Graphic Associates, Inc., 963 F. Supp. 1308, 1316 (S.D.N.Y. 1997). "Under the equitable tolling doctrine, on the other hand, a statute of limitations does not run against a plaintiff who was justifiably ignorant of his cause of action." Id. Each doctrine requires the plaintiff to show that his failure to timely file suit was not the result of his lack of diligence. Id. Courts may also consider whether the defendant would be prejudiced if the statute is tolled. See, e.g., Sierra Club North Star Chapter v. Peters, No. 07-2593 (MJD/SRN), 2008 WL 2152199, at *9 (D. Minn. May 15, 2008).

Plaintiffs, relying on Peters, focus their briefing on equitable estoppel and argue that defendants "lulled" them into believing that it was not necessary to commence litigation. However, Peters is distinguishable from the case at hand. In Peters, the federal agency at issue had published a misleading notice in the Federal Register that did

not accurately state the deadline for filing a claim.  Id. at 10.  The correct deadline was June 4, but the notice stated that the deadline was June 6. The plaintiff filed its suit on June 5, after expiration of the six month statute of limitations (as correctly calculated), but before the date indicated in the inaccurate federal register notice.  Id.

Here, unlike in Peters, there is no allegation that plaintiffs did not know about the correct deadline to file their suit, nor that defendants made a false representation to plaintiffs about the deadline.

Plaintiffs claim that the MTA lulled them into inaction by not promptly and sufficiently replying to certain letters from elected officials, or copying plaintiffs on such responses.  However, these facts do not amount to concealment or egregious conduct.  Plaintiffs also claim that the government's failure to disclose the MTA Design Guidelines amounts to concealment of those guidelines in order to lull plaintiffs into not filing suit.  But plaintiffs have not established that the government affirmatively misstated or unlawfully failed to disclose the internal, nonpublic MTA Design Guidelines.

Additionally, plaintiffs have not established that they displayed the requisite diligence to justify application of equitable estoppel.  Unlike the plaintiff in Peters, the plaintiffs in this case did not file their complaint before the date promulgated by the FTA in the Federal Register Notice. Rather, they unreasonably waited to file their suit until many months after the expiration of the statute of limitations.  Plaintiffs filed numerous

comments in opposition to the Preferred Alternative, which were addressed and rejected in the FONSI. However, after that FONSI was issued, they unreasonably waited well over one year to file this suit.

Finally, defendants would be prejudiced if the court tolls the statute of limitations. The six month limitations period ended eight months before plaintiffs filed this suit. Defendants apparently relied on the finality of the FONSI and are now in the process of constructing the subway entrances in front of Yorkshire Towers.

Accordingly, to the extent plaintiffs challenge the decision to site the main subway entrance mid-block on 86th Street, plaintiffs' claim is time-barred by the statute of limitations.

Plaintiff's New Information Claim

The relevant statute and regulation regarding new information were quoted earlier in this opinion. To reiterate, the statute provides that the "Secretary shall consider new information received after the close of a comment period if the information satisfies the requirements for a supplemental environmental impact statement under section 771.130 of title 23, Code of Federal Regulations." 23 U.S.C. § 139(l)(2). The relevant portion of the regulation provides that an EIS shall be supplemented whenever the FTA determines that

> (1) Changes to the proposed action would result in significant environmental impacts that were not evaluated in the EIS; or

> (2) New information or circumstances relevant to environmental concerns and bearing on the proposed action

> or its impacts would result in significant environmental
> impacts not evaluated in the EIS.

23 C.F.R. § 771.130(a)(1)-(2).

Section 771.130(a)(1) clearly does not apply here because plaintiffs do not refer to changes in the proposed action, that is, the Preferred Alternative.

Section 771.130(a)(2) is phrased differently.  It is not limited to changes to the proposed action, but subsection (2) requires consideration of new information or circumstances, if these bear on the proposed action or the impacts of that action and would result in significant environmental impacts not evaluated in the EIS.  Quite clearly it still deals with, and is limited to, the proposed action, here the Preferred Alternative.  Thus subsection (2) requires consideration of new information or circumstances bearing on <u>the action which the agency proposes</u> or the impacts of <u> such action</u>, which would result in significant environmental impacts of <u>that action</u>.  In the view of the court, a new proposed alternative to that action, or a newly revised alternative to that action, is not within the purview of subsection (2), according to the plain meaning of the words in that subsection.  What we have in this case is not new information or circumstances that bear on the proposed action or its impacts, but rather a suggested alternative, Revised Alternative 5, to that proposed action, the Preferred Alternative.

Suing on the basis of a new alternative or a revised alternative after the final decision has been made is an attack on the decision itself.

As part of the NEPA-mandated decision-making process, an agency must "give full and meaningful consideration to all reasonable alternatives." <u>N. Idaho Cmty. Action Network v. U.S. Dep't of Transp.</u>, 545 F.3d 1147, 1153 (9th Cir. 2008); <u>see</u> 42 U.S.C. § 4332(c).  The time leading up to the FTA's decision was the appropriate time for plaintiffs to present their Revised Alternative 5 so that it could have been considered by the agency in making the decision.

Plaintiffs were required to commence any suit challenging the agency's evaluation of reasonable alternatives within 180 days of publication of the FTA's decision.  <u>See</u> 23 U.S.C. § 139 (l)(1).  Plaintiffs did not do so and their claim regarding Revised Alternative 5 is time-barred.

As described earlier, the complaint refers to Revised Alternative 5 and in their motion papers plaintiffs refer to additional pieces of allegedly new information.  But these additional items in the motion papers are put forward only for their asserted value in showing the benefits of Revised Alternative 5.  Therefore, for the reasons just discussed with regard to Revised Alternative 5, these items are not new information within the meaning of the relevant statute and regulation.

Plaintiffs also waived their right to insist on their revised alternative.  Failure to raise an alternative before close of the comment period waives one's right to challenge the agency's evaluation of reasonable alternatives.  <u>See</u> <u>N. Idaho Cmty Action Network</u>, 545 F.3d at

1156 n. 2 (citing <u>Dep't of Transp. v. Public Citizen</u>, 541 U.S. 752, 764-65 (2004)).  During the environmental review process, plaintiffs made numerous comments, but did not advocate or propose an alternative.  Other concerned citizens presented alternative proposals.  The FTA considered these comments and proposals and provided written responses.  In contrast, plaintiffs did not provide defendants with Revised Alternative 5 until December 2010, which was well after the close of the comment period.

The court holds that plaintiffs' claim under NEPA must be dismissed on the ground that it is barred by the statute of limitations, and the further ground of waiver.

Plaintiffs request, that in the event the complaint is dismissed, they should be allowed to replead.  However, their proposed repleading would only add the items of alleged new information now found in their motion papers and summarized earlier in this opinion.  Such repleading would be futile and the request is denied.

<u>State Law Claims</u>

Plaintiffs also bring state law claims under SEQRA and New York General Municipal Law section 51.  The court has already dismissed plaintiffs' federal environmental claims.  The court declines to exercise supplemental jurisdiction over plaintiffs' state law claims.  <u>See</u> 28 U.S.C. § 1367(c).

The Motion for a Preliminary Injunction

It is evident that the dismissal of the causes of action means that there can be no injunctive relief granted to plaintiffs.  The court confirms, what was held at the earlier hearing, that the motion for a preliminary injunction is denied.

**CONCLUSION**

For the foregoing reasons, the complaint is dismissed without leave to amend.  Plaintiffs' motion for preliminary injunction is denied.

SO ORDERED.

Dated:  New York, New York
       December 1, 2011

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/1/11